# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| BERTIE JOANNA STROUD, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 2:17-CV-00067 |
| NANCY A. BERRYHILL, acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Joanna Stroud, seeks review of a second unfavorable decision by the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. The Plaintiff's application was denied initially and upon reconsideration. An administrative law judge (ALJ) held a hearing on the Plaintiff's application, and on August 21, 2012, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because she was not disabled under the relevant provisions of the Social Security Act. On December 27, 2013, the Appeals Council denied the Plaintiff's request to review the ALJ's decision. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

On August 26, 2015, the Honorable Magistrate Judge John E. Martin issued an opinion and order remanding the case for further proceedings consistent with his opinion. (R. at 658, ECF No. 6.) On March 4, 2016, the Appeals Council sent the case back to the ALJ who, after another administrative hearing held in June 2016, issued a second unfavorable decision on December 6, 2016. The Plaintiff did not request Appeals Council review; therefore, the ALJ's decision became the final decision of the Commissioner. The Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

# BACKGROUND

The Plaintiff was born on February 25, 1959. (R. at 495.) The Plaintiff previously worked as a receptionist and in customer service. (*Id.*) In this case, the Plaintiff claimed to have become disabled on August 14, 2009. (R. at 485.) She was involved in a serious automobile accident in 1996 where she suffered whiplash and in the following years, experienced primarily neck, shoulder, and arm issues. (R. at 51, 340.) The Plaintiff claims to be disabled due to the severe impairments of cervical spine degenerative disc disease and fibromyalgia. (R. at 487.)

# THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff had not engaged in SGA since the alleged onset date of disability, and thus, the Plaintiff satisfied the step one inquiry. (R. at 487.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments of cervical spine degenerative disc disease and fibromyalgia were severe impairments because they significantly limited her ability to perform basic work activities. (R. at 487–88.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, she earns a presumption of disability "without considering [her] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform light work as defined by § 404.1567(b), with the following exceptions:

> the claimant is able to occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. The claimant has no limitations in her ability to sit, stand, or walk. The claimant is unable to climb ladders, ropes, or scaffolds. The claimant must avoid hazardous environments (an inability to drive as part of her work duties, no operating moving machinery, no work around exposed flames or at unprotected heights, no work around unprotected large bodies of water) and the claimant must avoid concentrated exposure to unguarded hazardous machinery. The claimant must have no static maintenance of her neck other than the neutral position and she must

> have no repetitive or extreme flexion, extension, or rotation to the right of her neck. The claimant is to have no overhead use of her upper right extremity and no forceful or repetitive gross manipulation with her right hand. The claimant is limited to simple, routine, and repetitive tasks.

(R. at 489.) This RFC decided on remand is identical to the one the ALJ determined in his initial determination. (R. at 22.)

In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for the reasons the ALJ explained in the decision. (R. at 490.)

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform her past work and, if necessary, whether the claimant could perform other work in the economy. 20 C.F.R. § 416.920. At this initial step of the evaluation, the ALJ determined that the Plaintiff could not perform her past work, but in light of her age, education, work experience, and RFC, that she could perform other jobs that existed in significant numbers in the national economy. (R. at 495.) Specifically, the Vocational Expert (VE) testified at the hearing that she could work as a cashier. (R. at 496.)

## STANDARD OF REVIEW

A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff claims that the ALJ committed several errors on remand including that the ALJ's residual functional capacity (RFC) assessment regarding the Plaintiff's range of motion in her neck and arms was not supported by substantial evidence; the ALJ impermissibly relied upon non-examining state agency reviewing physicians; and the ALJ failed to comport with the law of the case and evaluate the Plaintiff's fatigue.

**A.      Residual Functional Capacity Assessment (RFC)**

The Plaintiff argues that the ALJ did not properly explain his conclusion that the Plaintiff could "have no static maintenance of her neck other than the neutral position and she must have no repetitive or extreme flexion, extension, or rotation to the right of her neck." (R. at 489.) SSR 96-8p details the requirements of the ALJ's RFC analysis:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a logical bridge between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (citation omitted). ALJs must explain how they reach conclusions about a claimant's physical capacities. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "[A]lthough the ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence

6

supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Finally, "[a] decision that lacks adequate discussion of the issues will be remanded." *Id.* at 1121.

In this case, the ALJ states that he "ha[s] acknowledged the claimant's limitations, as documented by both Drs. McIntire and Ibrahim, by limiting her to work that involved no static maintenance of her neck other than the neutral position and no repetitive or extreme flexion, extension, or rotation to the right of her neck." (R. at 490–91.) However, the accommodations have not been tied to any specific evidence in the record, and the ALJ has not identified the exact medical evidence to substantiate his belief about the Plaintiff's functional capacity. For example, limiting the Plaintiff to no repetitive flexion conflicts with the medical records of Dr. McIntire (the Plaintiff's long-time primary care physician who sees her regularly). Dr. McIntire noted in his Physical Capacity Assessment dated February 21, 2011, that the Plaintiff "has to stand up and flex at waist to sign papers as she cannot flex her neck to see the paper" and "she cannot rotate or flex neck." (R. at 339.) This comports with Dr. McIntire's treatment notes dated November 10, 2014, finding that the Plaintiff had neck flexion of about 5 degrees and neck extension of about 5 degrees. (R. at 1276.) This is also consistent with the findings of the consultative examination performed by Dr. Smejkal, who was unable to perform range of motion testing in the Plaintiff's cervical and lumbar spine due to her extreme pain. (R. at 281.)

In this case, where the ALJ does not cite to any evidence in the record demonstrating that the Plaintiff could engage in any flexion of her neck, and no doctor has stated this opinion, the ALJ erred in finding that she could flex her neck so long as it was not repetitive or extreme. *See, e.g., Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (holding the ALJ erred in

finding the claimant could occasionally stoop without addressing a doctor report that the claimant had only forty degrees of flexion in his lower back); *Thomas v. Colvin*, 534 Fed. Appx. 546, 551 (7th Cir. 2013) (remanding where an ALJ found the claimant could occasionally stoop, despite a doctor report finding the claimant had only fifty degrees of flexion in her lower back). As this caselaw shows, if a claimant is limited to a certain degree of motion, the ALJ does not appropriately accommodate the claimant by providing durational limitations. The ALJ gave no reasoning or explanation as to how he decided the appropriate neck flexion for the Plaintiff, which requires remand. *See, e.g.*, *Gaines v. Astrue*, 782 F. Supp. 2d 696, 701 (S.D. Ind. 2011) (remanding because "the ALJ did not explain in his decision why he concluded that [the claimant] could stoop occasionally despite the limited lumbar forward flexion found by two physicians."). Additionally, although the ALJ found that the Plaintiff could maintain her head in a static "neutral position" (R. at 490–91), the ALJ does not point to any medical evidence that supports this finding. This runs afoul of the requirements of SSR 96-8p.

The Plaintiff requests an award of benefits, citing *Rohan v. Barnhart*, 306 F. Supp. 2d 756, 770 (N.D. Ill. 2004), and *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)[1], for the proposition that an award of benefits is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion. In this case, the Court does not believe an award of benefits is warranted. The evidence is not so one-sided as to compel a finding that the Plaintiff is disabled. Moreover, the delay involved in the remands has not become unconscionable, and the agency has not displayed "obduracy" in complying with the law of the case. *Rohan*, 306 F. Supp. 2d at 771 (quoting *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998)).

---

[1]Contrary to the Plaintiff's suggestion, the Seventh Circuit held that a remand was in order in *Campbell*, and did not award benefits in that case. *Campbell*, 988 F.2d at 744–45.

As such, a second remand is appropriate for the ALJ to determine and explain any restriction of the Plaintiff's flexion of her neck.

The ALJ noted during the remand hearing that there was a lack of medical records and no evidence of treatment since 2012. (R. at 576–77.) Some medical records were submitted after that hearing. (R. at 574.) However, the latest office treatment records are from May 2016 and the state agency medical consultants evaluated the Plaintiff in early 2011. (R. at 297, 337, 503.) On remand, the ALJ should consider ordering a medical evaluation to determine the Plaintiff's ability to flex her neck. *See* 20 C.F.R. §§ 404.1517, 416.917; *Scott v. Astrue*, 647 F.3d 734, 741(7th Cir. 2011); *Smith v. Apfel*, 231 F.3d 433, 437–38 (7th Cir. 2000).

Finally, the ALJ's determination that the Plaintiff could engage in no overhead use of her right upper extremity, but finding no restrictions on her left side (R. at 489), is not supported by substantial evidence. *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (reiterating that the ALJ must set forth a supportable record basis for the functional capacity finding). Dr. McIntire opined that the Plaintiff could not reach above her head or shoulders, and Dr. Smejkal's examination found that she was limited to fifty degrees of forward elevation and abduction for both arms. (R. at 281, 339.) On remand, the ALJ should evaluate and identify his reasoning for whether the Plaintiff should be limited to engaging in no overhead use of both her right and left extremities.

**B.      Non-Examining State Agency Reviewing Physician Opinions**

The Plaintiff argues that the ALJ also erred by affording "some weight" to the limitations opined by two non-examining state agency reviewing medical consultants, Drs. J. Sands and M.

Brill. (R. at 494.) The Plaintiff contends that the administrative record contains over 450 pages of additional medical files submitted after the state agency doctors reviewed the record and offered their opinions. (R. at 26–27, 836–1308.)

The ALJ only afforded those opinions "some weight" and he specifically noted that "in further consideration of evidence submitted since the time that Drs. Sands and Brill rendered their opinions, and in further deference to the claimant's testimony of pain with associated fatigue, I have incorporated additional, more restrictive postural limitations and have included environmental limitations, as noted above." (R. at 494.) As such, the Court does not believe that the ALJ impermissibly relied upon the opinions of the state agency reviewing physicians.

### C.   Complaints of Fatigue and The Law of the Case

Judge Martin found in remanding this matter, that "[t]he ALJ improperly discounted fatigue as a side effect of Plaintiff's medications" and noted that "the record does, in fact, contain evidence that Plaintiff complained to her physician about fatigue and tried other medications that were less successful." (R. at 649, 652.) The ALJ was directed to fully consider the testimony of the Plaintiff and other acceptable sources.

On remand, the ALJ noted in his opinion that "as directed by the District Court, I have considered the claimant's allegations of fatigue as a side effect, but as explained, there is scarce mention of it in the record." (R. at 491.) The ALJ also found that:

> Although Dr. McIntire testified that due to the combination of pain, headache severity, and fatigue as an adverse side effect of medication, the claimant had difficulty with focus and concentration, the record shows that she consistently presented with normal cognition, memory, judgment and thought content . . . Furthermore, contrary to Dr. McIntire's testimony that fatigue negatively impacted the claimant's mental functioning, he consistently documented that her mental status

10

examinations were within normal limits. Nonetheless, in deference to the claimant's subjective complaints of fatigue, I find that the claimant had to avoid hazardous environments (an inability to drive as part of her work duties, no operating moving machinery, no work around exposed flames or at unprotected heights, no work around unprotected large bodies of water) and concentrated exposure to unguarded hazardous machinery. I also find that the claimant was limited to simple, routine, and repetitive tasks.

(R. at 491–92.)

Because this case is already being remanded for the determination of the RFC regarding the Plaintiff's neck flexion and ability to engage in overhead use of her left extremity, this Court need not specifically rule upon whether the ALJ properly followed Judge Martin's directives and supported his findings about the Plaintiff's fatigue with substantial evidence. However, the Court notes that in contrast to the ALJ's finding that there was "scarce" mention of fatigue in the record, the Plaintiff's complaints of fatigue are well documented in the record. For example, in a function report dated October 31, 2010, the Plaintiff noted that she slept on and off throughout the day. (R. at 192.) During the time period of 2009–2013, the Plaintiff had daytime grogginess from her medication, took naps daily for three to four hours, and had an inability to sleep at night. (R. at 589–90.) On April 4, 2012, Dr. McIntire wrote that the Plaintiff was using her medications as prescribed, but she was "chronically tired" because of them and not sleeping through the night. (R. at 412–13.) The Plaintiff's husband testified during the first administrative hearing that the Plaintiff would sleep in bed in the afternoons due to her medication. (R. at 70–71.) There are notes in Dr. McIntire's medical records that the Plaintiff slept a lot and was sleepy or fatigued. (R. at 239, 243, 321.) On July 15, 2013, the Plaintiff told Dr. McIntire that she was tired (R. at 1146), on April 28, 2014, the Plaintiff told Dr. McIntire that all she wanted to do was sleep (R. at 1281), and on November 10, 2015, she said she had no energy and "does

not want to sleep her life away" (R. at 1260). During the hearing on June 14, 2016, the Plaintiff testified that her medication made her feel like she was drunk and sleepy. (R. at 589.)

It is true, as the ALJ pointed out, that there are multiple points in the record where the doctor noted that the Plaintiff was "negative" for fatigue. (R. at 492.) But Dr. McIntire testified at the second hearing held on June 14, 2016, that if he indicated that an individual is "negative" for a particular symptom, that means "[m]aybe at that moment they are not having that symptom . . . and if it's a chronic ongoing thing, I may not note it every time. And so if she's not having a headache at that moment, in that morning, or that day when I see her, it will say negative for headaches." (R. at 574–75.) If the notes say she has "no fatigue," it just indicates the Plaintiff's symptoms at that moment and "sometimes [Dr. McIntire] might not indicate everything at every visit." (R. at 575.) The ALJ found this testimony "general and unpersuasive" and believed Dr. McIntire's opinion "primarily reflected the claimant's subjective allegations." (R. at 493.)

The ALJ stated in his opinion that, "in deference to the claimant's subjective complaints of fatigue" he limited her to avoid hazardous environments and to simple, routine, and repetitive tasks. (R. at 491–92.) However, there is no evidence that limiting the Plaintiff to simple, routine, and repetitive tasks would address the Plaintiff's fatigue issues and the Plaintiff's argument that her fatigue would affect her ability to work. As the Seventh Circuit recently commented, "[t]he judge mentioned that she was restricting the plaintiff to simple work because of his sleep apnea, but did not explain why someone with hypersomnia should be able to stay awake at work just because it's simple work." *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016).

On remand, the ALJ should once again consider the Plaintiff's complaints of fatigue, which now spans five years in the record, and properly address the side effects of her

medication. *See Martinez v. Astrue*, No. 2:09-CV-62-PRC, 2009 WL 4611415, at *12 (N.D. Ind. Nov. 30, 2009) (holding the ALJ's failure to address plaintiff's need to lie down during the day required remand). Should the ALJ find that the Plaintiff's complaints of fatigue are incredible, he should explain why that is his conclusion. *See Kerlin v. Colvin*, No. 13 C 6598, 2015 WL 74098, at *4 (N.D. Ill. Jan. 5, 2015) (remanding where the ALJ noted the claimant's complaints of daytime fatigue and discounted them on the basis of a few physician's reports, picking out evidence supportive of the ALJ's conclusion while ignoring other reports favorable to the claimant's allegations).

## CONCLUSION

For the reasons stated above the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on September 19, 2018.

 s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT
